All rise. Please be seated. Madam Clerk, please call the case. Please judge 10-0828 Whiteside County v. Department of Revenue of Calgary to Murphy. You may proceed, Counsel. Good afternoon, Your Honors. Rachel Murphy, may it please the Court. Rachel Murphy, Assistant Attorney General, appearing on behalf of the appellant, the Illinois Department of Revenue. Your Honors, the Department did not clearly err in determining that under this Court's controlling precedent, the privately leased hangars at Whiteside County Airport were not exempt from taxation because they were not used exclusively for public purposes. This matter can begin and end with this Court's decision in the Marshall County case because it is indistinguishable from this matter. Although in that case the Court was faced with the issue of airplane tie-down leases, the Court noted that there is no factual distinction between private hangar leases and private airplane tie-down leases. And there is no reason for this Court to overrule Marshall County as it has been expressly left intact by the Illinois Supreme Court in the Harrisburg-Raleigh decision. In that case, the Court distinguished between the broad airport authorities' purposes exemption, which can include private uses, and the narrow municipal property exemption, which applies only to property that is used exclusively for public purposes and not leased to private parties. This distinction is logical, as the Court noted, because if the public purposes exemption and the airport authorities' purposes exemption were synonymous, there would be no need for a separate airport authorities' exemption and the General Assembly's enactment of that exemption would be superfluous. The airport authority is a different animal, right? A different creature? Correct. Yes, Your Honor. The airport authority is a separate municipal corporation that has to be created by petition and election, and it serves a larger population. There is a territorial population requirement for forming an airport authority, and it's governed by an appointed board of commissioners, depending on the population of the territories that are served. Airport authorities in this area include the Quad Cities International Airport, the airport in Rockford. These are larger airports that serve a larger population. Joliet has an airport authority. Joliet, yes. It's not that large. It has to serve a population of, I believe it's 5,000, the territory. So there is a population threshold, but it's not hundreds of thousands of people. But there is a threshold that has to be met, and there are corporate requirements that have to be undertaken before one is an airport authority. So if it's public purpose, it would be exempt under the municipal, right? It has to be exclusively for public purposes, yes. And how is that defined? The court has looked at that as primarily for a public purpose. So, for example, in the Franklin County case that the airport board cites, the court looked at whether the leases there, the hotel use, the restaurant use, were primarily for a public purpose. And even though there was some private usage of the hotel banquet facilities and that kind of thing, the court determined that the primary use was public and that any private uses were secondary. But in contrast here, what the department's referee determined is that the private uses dominate. The hangar is being leased to a private party for private storage of their private aircraft. And the airport itself serves a small group of people. It does not have regularly scheduled airline service. It provides simply for flying instruction, engine and radio maintenance, and charter services. So the population that is served is much smaller than was the case of the Wrendley Conservancy District. And so the referee properly distinguished those two cases, finding that any public benefit here was secondary to the primary private benefit of the leases. Okay, all these other functions that the municipal airports engaged in, are those for public purpose or private? Or are you just focusing on the airport hangars leasing? We are just focusing on the hangar space itself. That is all that is at issue here. Well, you conceded some of the additional property, right? Yes, Your Honor. Yes, we are focused solely on the hangars in its hangars 4, 5, and 6. The space in those that is leased to private entities per the leases that are in the record. So those hangars are going to be on the tax rolls? Those are not exempt, correct. Well, the ones that you're contesting, what are those hangars used for? The leased hangars, what are they used for? Almost all of them are restricted to the storage of private airplanes. One of the leases, however, allows for meetings and, I believe, grills and party supplies to be stored there. That's the EAA lease. Well, doesn't that facilitate the use of the airport by having a place to store your plane? It does facilitate the use of the airport, but that doesn't make it a public purpose. At most, that would make it an airport purpose. And the stipulations that the airport board is relying on, all they do is stipulate, in essence, that these hangars serve the same purposes as the airport authority hangars. But the problem is this airport does not get the benefit of the airport authority purposes exemption, which is broader. And so the fact that it may facilitate use of the airport by these private parties doesn't make it a public purpose, even if it would make it an airport authority purpose when those same leases are at an airport authority. I'm not sure they made the argument, but this revenue from private leasing, where does it go? I believe that it is used to defray the cost of operating the airport. Which would be public purpose, right? You're already saying that the airport itself is all private. You're not, are you? No, Your Honor. But the fact that revenue from a lease is used by the airport is not relevant to the analysis. As this court stated in Marshall County in stating that the farmland there that was leased was not used for public purposes, even though the income from the lease went to defray costs of the airport. It is not the use of the monies that is relevant. It is the actual use of the property itself that matters. Well, I mean, and of course, maybe there's a legislative decision, but it just seems like we're just robbing Peter to pay Paul no matter what. The question is whether this money goes into the state's general fund or whether it goes into the Whiteside County Airport Authority, all of which is going to be a benefit, hypothetically speaking, to the taxpayer, right? The tax money would not go to the state. It is a local property tax. But there are other bodies that may benefit from the taxes collected on the airport. It's not just taking money out of one pocket and putting it back into your left pocket. There may be other. Well, it's general property tax. It would be all of your other tax authority. It would be your schools, junior colleges, whatever, right? Correct. What you're doing is you're taking money handlers and you're putting them on the tax roll. I believe it's 27, something like that. 27 hangers? Let me count them up. 27 hangers? Bays, hangar bays. So there are three hangars. Well, we're talking about the buildings, right? But we are talking about there are ten bays in each of the three hangars. Correct. And we are talking about specific bays within those hangars. I see. So we are not contesting, as Justice Carter pointed out, we are not contesting the vacant hangar bays or the hangar bays used by the airport or the hangar and office used by the state police. Okay. We are contesting only the privately leased hangar bays. How did this all start out just basically? Which taxing benefit group? This was the airport board applied for an exemption, and the Whiteside County Board of Review granted an exemption on the entire parcel. Then the department, or recommended to the department to grant an exemption on the entire parcel. The department stated that it would grant an exemption on the bays that were used by the airport, but not the remaining bays. So prior to that time, they were being taxed? I don't know, Your Honor. Prior to the 2007 tax year, I do not know what the status was. This is only for that 2007 tax year? Correct, yes. Just for the 2007 tax year. Unless the court has further questions. Thank you. We ask that you affirm the department's decision with respect to the privately leased hangars. Thank you, Counsel. Counsel, you may proceed. Thank you, Your Honor. Good afternoon. May it please the court. Counsel, my name is Tim Zellinger. I'm here to address the appellee side on behalf of the airport board. I want to take up a couple of the questions that Your Honor has raised. With respect to Justice Smith's question, with respect to the issue of where the monies go. In this case, we are talking about a local property tax. At the time the application for exemption was made, all of the local governmental bodies that would be affected by this were given notice. There were no protests filed. They all had that opportunity. There were no protests filed. There were no objections made by any of these other taxing bodies to the fact that the airport sought exemption. Also dovetails into Justice Holter's question about what was going on before. Now, this does affect the 2007 tax year. But prior to 2007, and I will acknowledge this is not in the record, but prior to 2007, the airport didn't pay tax on the hangars. Because the assessor didn't put it on the tax rolls. In 2007, for that tax year, a new assessor came in and placed it on the tax rolls. Obviously, in response to that, the airport filed the, as counsel noted, filed a request for exemption. The board review said, yes, it should be exempted. And here we are. It's how we've gotten to this point. With respect to the question on cost, the stipulation in paragraph 9 addresses the fact that this isn't a profit-making venture of the airport. We have three hangar buildings. There are 10 bays in each building. And for those portions that are rented out, and I would note that the leases that we're talking about are month-to-month leases, very expressly in those lease documents, month-to-month. Those costs are used to defray expenses at the airport. It does cost money to run an airport, as it does any other governmental function. Isn't it true that Marshall tells us that where the income goes is not the critical question, it's the use of the land? Marshall does talk about the use of the land, Your Honor, which is consistent with subsequent cases, whether we talk about Harrisburg under airport authority or we can look at the Franklin County case. And from our perspective, the Franklin County case is very instructive. It's not an airport authority either. What is the court addressing in that case? The court in that case is addressing how do we interpret this primary use, primary public purpose? And in Franklin County, the court concludes, and I do want to back up. Interestingly enough, in Franklin County, the Department of Revenue is the one that said it should be exempt, even though you've leased it out, because those are real and substantial things that are related to the public purpose. The taxing bodies in that case objected, and it went up to the appellate court. And the appellate court in Franklin County said, no, we're going to allow the exemption, and it's under the general exemption just as we are here in the county airport case. The court said, because it has a real and substantial relationship to the purpose, the public purpose, the fact that it's leased out doesn't change. It stays exempt. Now, where else do we see that language? We see that language in the Harrisburg decision, because the Harrisburg court talks about real and substantial relationship to the purpose of an airport authority. I would submit that I see no distinction, as we've argued in this case from the beginning, there's no distinction between how a hangar bay should be treated at a county airport and how a hangar bay has been declared by the Supreme Court to be treated at an airport authority. Well, the Supreme Court thinks there's a difference. No, I don't believe that. In Harrisburg, they do. I would say that the Supreme Court simply said, we have before us an airport authority case. Marshall County was a county airport case, so we're not going to address that. They limited their decision, as courts sometimes do, to what's before them. I think that's no different than Marshall County. Why did Marshall County, at least from reading the opinion, I can't speak for what the justices thought, but when you read the opinion, they address the issue of tie-down areas. Now, a tie-down area is just an outside area where an airplane can be tied down. It's not much different than a hangar bay. It doesn't have a rope over it. I guess what I'm troubled with, if you think Harrisburg didn't distinguish itself from Marshall, then why wouldn't the Harrisburg case specifically overrule Marshall? I guess because we had before an airport authority case, Your Honor, and again, I can't speak for the Supreme Court, but the way I read the opinion is they were addressing simply airport authority. We're not dealing with a county airport today. They were going to limit their decision to that. But the analysis that they applied and the conclusions that they reached, that merely leasing out hangar bays does not destroy the tax exemption, that line of thought carries over exactly into what we have here at this county airport and is consistent with the same analysis that the Franklin County Court used in determining that the hotels and condominiums, the property remained exempt. Doesn't the statute, when you have an airport authority, grant a broader exemption from taxation than the municipal airport kind of situation? The exemption, and I believe that's Section 120 for airport authority, says that property utilized for airport authority purposes is exempt. That's correct. And here, the statute we're dealing with talks about use for public purposes, and I think counsel is correct when she says the analysis the courts have adopted is primarily used for a public purpose. I'm familiar with that Franklin County setup. They've got a lake where people boat and fish. Nice place. They've got areas there where people, they've got hunting, they've got clay target shooting, and they've got some hotels and they've got some of those little cabins right on the lake and restaurants and what have you there to give people a place to facilitate the use of those properties because there's not a heck of a lot else around there. And so at least the 5th District talked about facilitating the public use of that property, making it hospitable for people to come in and not have to go in and then drive 40 miles to Mount Vernon or back to St. Louis or wherever to get a meal or a place to stay.  To that extent, that if it's facilitating the public use, it would seem to me to be having a hanger for your plane does certainly facilitate people wanting to use this particular airport. In fact, Your Honor, the Department of Revenue in this case stipulated in paragraph 7 that it's integral to the operation of an airport, particularly Whiteside County, that aircraft tenant hangers are provided for storage of privately owned aircraft. It was also stipulated in paragraph 8 that tenant aircraft hangers are considered violent of the operation of the airport. It's exactly the same, Your Honor. You cannot have in the modern era, if you will, to the extent we're in the modern era, you cannot have an airport without hangers. No one's going to use your airport or very few people are going to use your airport if you don't have a place to store a plane that's indoors. Planes are expensive. They have to be worked on. They need an indoor storage space. That's the whole purpose. And that's the same analysis the court utilized in Harrisburg when they decided, you know what, just because you lease it out and that's benefiting those people personally doesn't destroy that it's for an airport authority purpose. The fact that these hanger bays are leased out privately doesn't destroy that it's still for a public purpose. It's vital to the operation of the airport. It's the exact same analysis utilized in Franklin County. And that's why we feel... So how do we avoid Marshall County? Well, Your Honor, I think you have two choices. I think you can say, you know what, Marshall County is overruled. We can't. Just for the record, we cannot overrule. We don't have to follow it, but one appellate court panel can't overrule another appellate court panel. We cannot overrule it, but we can decide not to follow it. I would argue that's a distinction without a difference, but I understand, Your Honor. Well, the Supreme Court made the distinction very plain to us. I think the other thing you can do is in Marshall County, the court's conclusion, Justice Stouter's conclusion that tie-down areas were not exempt followed the fact that nobody in the case appealed the underlying decision that hanger bays were not exempt. And he concluded, when I read the opinion, he concluded, you know what, they're not contesting the hanger bays. There's no difference between a hanger bay and a tie-down area, and therefore, that's the only conclusion I can reach. He didn't... There's no analysis of the underlying issue of how we get to the point, as the Harrisburg case said, how we get to the point of whether it's still being utilized for a public purpose. And that analysis, you can look at the DuPage County case, tracks that entire analysis and lays out how the courts have done that. And I see this as no different than Franklin County. Yes, it's leased out, but it's consistent with what the public purpose of that entity is, what the airport is. The airport in this case is used for lessons and private flying, right? Your Honor, it was... It benefits a few select members, doesn't it? No, it is utilized. It has all-weather aviation use. Its runways are desirable for basic aircraft, both commercial and private. It has charter services. I mean, it is there to benefit members of the public that need local aircraft service. It's no different than, well, to go back to the issue of the population base. To be an airport authority, you have to have a population, I believe, of 5,000. I believe that is the statute. Whitetown County has a population of 65,000 people. But they didn't become an airport authority? No, they haven't, Your Honor, because there's been no need to be an airport authority. But the purpose and what you're doing with the airport remains the same. Was there any evidence presented as to the income and the operating expenses of the airport, what percentage this income is to the overall operation? Very little, Your Honor. In stipulation paragraph 13, there's reference to the cost of the hangar building, $370,000. That was built with funds from the Department of Aeronautics, the state of Illinois, through a grant provided by the Federal Aviation Administration. The amounts of the tenant leases are in the record. For example, looking here, $165,000 a month. It's very little, Your Honor. As I understand, Franklin County, the finding of the holding was that this is a somewhat, arguably, de minimis use of the overall facility. Am I correct? I don't recall that it was made. Private uses. There's private uses and there are public uses. And that there's private uses, but it's a small part of the overall public use of that facility. The court in that case did track with great detail the revenue generated in the number of days stayed at the hotel or at the condominiums. Wouldn't it be important for the record to arguably show what the revenue is from these private leases in regard to the operating expenses, even though these are apparently generated from tax revenues? Am I correct? The operating expenses of the municipal airport. The entire budget, which is in the stipulation, Your Honor, the entire budget of the airport is what is appropriated to and by the county. The sole source of, the primary source of revenue is tax monies appropriated to the airport by the county. It's treated as no different than any other department within the county. In regard to your underlying question of the comparison of the revenue, I think just by looking at the leases, you can do the math, and it's very small compared to the overall cost of operating an airport. But that was not an issue that became something to deal with in the underlying case, Your Honor, because it was stipulated by the Department of Revenue that they're serving the same function, that there's no difference at a county airport versus an airport authority. Counsel, you have two minutes. Thank you. You know, so from the airport's side, from the airport's standpoint, it became not a critical piece of information. I don't believe it addresses the outcome or affects the outcome. The reality is it remains the same, and that is the purpose of these hangar bays, what they're being utilized for, even though they're leased out, remains primarily a public purpose. The merely leasing it out does not destroy that public purpose. Franklin County tells us that, and Franklin County uses the same analysis that Harrisburg does. Is it a real and substantial relationship to the underlying purpose of what this entity is? Well, I mean, the converse of that argument is, if you talk about private purpose, I think in these small airports, wouldn't it be unreasonable to assume that at least 90 percent of the planes that set their wheels down on those runways are privately owned? And if you take that attitude, one could argue, gee, the whole airport has no public purpose, which, of course, is not correct. You know, I guess I would say in response that the majority of vehicles that use our highways are privately owned. It doesn't destroy the fact that the highways are for a public purpose. I think the analysis remains the same. Okay, yeah, the public purpose is to allow people to get from one point to another, correct? Transportation, Your Honor, yes. Okay, so what's the public purpose of this municipal airport? The public purpose of the airport would be to provide a facility at which peak residents of the county can either base aircraft, fly in and out of the airport, have service on their aircraft, charter an airplane. There is a charter service, as stipulated, and the ability to provide those functions. And the legislature in the County Airport Landing Field Act, been around since the 1940s, has declared that those purposes in Section 4 of that act are a public purpose. Counsel to be attended, sir. Thank you. Thank you, Your Honor. Thank you. Counsel? Let me just ask you first. Do we know, does the record say whether, for example, the state police and the Department of Conservation keep airplanes at that airport? The state police do, Your Honor, yes. And that bay that the state police use, we have not contested, is used for a public purpose. So when the county can no longer afford to run that airport, they shut it down and sneak police around there? They will have to find another place for their planes. That's correct. I have three points I wanted to make on rebuttal. First... And the state is paying lease payments to the airport, are they not? As far as I know. We are in some financial straits. Oh, really? But there has never been any allegation that they are delinquent. Okay. But they could be. I cannot speak to that. They may be behind in a timely manner. That is possible. First, I wanted to emphasize again the standard of review here. If you are looking at this case in comparison to the Franklin County case, please keep in mind that there is a clear error standard. What the referee found here is that the uses here that were facilitated by the hangars were primarily private. And that is not clearly erroneous, although it might have been possible to come to a different conclusion. What the referee found is that these hangar bays are being used by private people to store their private aircraft for their own individual private use. And that's true of the runway, too, isn't it? Private people are landing their private planes for their private benefit on that runway. But there's a difference, Your Honor, because we are looking at the use of the specific property at issue. We are not looking at the runway. We are not looking at the airport, the rest of the airport land. We are looking at the specific use of these defined hangar bays. And so the runway itself is used for a public purpose in that the public can come in and use those runways. The public cannot come in and use these private hangar bays. They are leased to an individual private entity. And so there is a distinction between the public purpose of the airport as a whole and the private use of these specific bays, which is all that is at issue here. And there was no clear error in finding that those specific pieces of property at issue are used primarily for private purposes. Second, I wanted to answer your question. There are 17 of the private hangar bay leases that are at issue. And finally, as to the difference between airport authority treatment and county airport treatment, that is an issue that the General Assembly has decided. And although it may not seem fair to treat them differently, the General Assembly has decided to do that. And if they want treatment as an airport authority, they need to go through the steps of incorporating as an airport authority. It was within the General Assembly's authority to distinguish between these two different types of airports and to treat those private leases differently under two different sections of the tax code. Or they can go to their local legislator and say, why don't you change the bill so that we get the same rates as the regional airport authority. Exactly, Your Honor. Counsel, you're adjourned. Unless there are further questions, I'll ask you again to adjourn. Thank you, Counsel. Thank you. We'll take this case under advisement and take a short recess for a panel change. And we will render a decision with dispatch. Thank you.